United States District Court
Southern District of Texas
ENTERED
May 22, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **TEGBARU ABORETUGN,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:26-cv-00153** |
| | § | |
| **DAVID COLE, *et al.*,** | § | |
| **Respondents.** | § | |

# ORDER

Before the Court is Petitioner's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 18). Petitioner seeks an emergency temporary restraining order to prevent Respondents from transferring him outside this Court's jurisdiction or removing him to a third country before he receives the process he contends is required under the Due Process Clause of the Fifth Amendment. (Dkt. No. 18 at 1–2).

For the reasons stated below, Petitioner's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 18) is **GRANTED in part**. Respondents are temporarily **ENJOINED AND RESTRAINED** from removing Petitioner before June 5, 2026, or until the Court issues a subsequent ruling on the motion for preliminary injunction, whichever is earlier. Respondents are ordered to respond to Petitioner's motion for a preliminary injunction, (Dkt. No. 18), by **May 29, 2026, at 5:00 p.m.**, and the Court will set a hearing for a date and time to be determined.

## I. BACKGROUND

Petitioner is a native and citizen of Ethiopia. He entered the country without authorization near Dulzura, California. (Dkt. No. 1-8 at 2). He was encountered by immigration officials on or about January 2, 2025, and he was apprehended and detained. (Dkt. No. 1-1 at 2; Dkt. No. 14 at 1).[1] While detained, Petitioner claimed fear of returning to Ethiopia and applied for asylum, withholding of removal, and protection under the

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Convention Against Torture (CAT). (Dkt. No. 1-1 at 2). After Petitioner demonstrated a credible fear of persecution or torture, the U.S. Department of Homeland Security (DHS) issued Petitioner a Notice to Appear under 8 U.S.C. §§ 1182 (a)(6)(A)(i) and (a)(7)(A)(i)(I) for being present in the United States without being admitted or paroled and for not having valid entry documents. (Dkt. No. 14 at 2; Dkt. No. 1-8 at 2).

At the final hearing of his removal proceedings on June 2, 2025, Petitioner was ordered removed to Ethiopia and simultaneously granted Withholding of Removal under the Convention Against Torture (CAT). (Dkt. No. 1 at 6; Dkt. No. 1-2; Dkt. No. 14 at 2). Both parties reserved appeal of the decision, but neither party filed an appeal. (Dkt. No. 1-2 at 5; Dkt. No. 1 at 8). As such, the order of removal became final on July 2, 2025. *See* 8 C.F.R. § 1241.1(c). No countries other than Ethiopia were designated for removal during his proceedings. (*See* Dkt. No. 1-1 at 4).

Petitioner filed a petition for a writ of habeas corpus on February 3, 2026, approximately seven months after his order of removal became final. (Dkt. No. 1). He asserts that his continued detention violates the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment. He also claims that his removal to an undisclosed third country would violate the Due Process Clause and the INA.

On May 21, 2026, Respondents filed an advisory stating that Immigration and Customs Enforcement, Enforcement and Removal Operations (ICE ERO) was giving five days' notice of its intent to remove Petitioner from the United States. (Dkt. No. 17 at 1). The notice does not identify a country to which Petitioner would be removed.

On May 21, 2026, Petitioner filed an Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 18). Petitioner contends that removal to an undisclosed third country without providing him adequate notice and an opportunity to contest such removal or an opportunity to seek fear-based protection from that country violates his due process rights. (Dkt. No. 18-2 at 10).

## II. LEGAL STANDARDS

### A. Temporary Restraining Order

The purpose of a temporary restraining order (TRO) is to preserve the status quo and prevent irreparable harm. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). There are four elements that must be met for

the extraordinary relief of a TRO or preliminary injunction. A movant must demonstrate that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The party seeking the injunctive relief must prove each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Miss. Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985). The third and fourth factors—harm to the opposing party and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

None of these elements carries "a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). "Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (citing 7 Moore's Federal Practice ¶ 65.04(s) (1982); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2942 at 368 (1973)).

### B. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

## II. DISCUSSION

Having considered Petitioner's Application and the applicable law, the Court finds that a temporary restraining order is warranted. As discussed below, the Court concludes that it has jurisdiction and the temporary restraining order factors weigh in Petitioner's favor. Specifically, the Court finds that Petitioner has demonstrated a likelihood of success on the merits of his due process claim, a substantial threat of irreparable harm absent injunctive relief, and that the balance of equities and public interest favor preserving the status quo pending further proceedings. Finally, given the circumstances of this case, the Court concludes that waiver of the bond requirement under Rule 65(c) is appropriate.

### A. The Court Has Jurisdiction

As a threshold matter, the Court finds that it has jurisdiction to grant a temporary restraining order. Federal courts have jurisdiction to determine their jurisdiction. *See Aranda Gomez v. Bondi, et al.*, 1:25-cv-258, Dkt. No. 6 (S.D. Tex. Feb. 4, 2026) (citing *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 13512, 11359 n.19 (5th Cir. 1978)). Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders . . . ." However, the Court agrees with the distinction made by other district courts between challenges to discretionary decision to execute a removal order—which are barred under 8 U.S.C. § 1252(g)—and challenges to the manner in which the removal order is executed, which are not barred. *See Mbaba v. Perez, et al.*, 5:26-CV-00070, Dkt. No. 8 at 3 (S.D. Tex. Jan. 18, 2026); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d, 137, 152 (W.D.N.Y. May 2, 2025) (citing *Torres-Jurado v. Biden*, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (collecting cases).

Here, Petitioner does not seek review of the decision to execute his removal order. (Dkt. No. 15-2 at 15). Instead, he seeks review of the process to which he is entitled following the entry of a removal order. (*Id.*). As such, the Court's jurisdiction is not foreclosed by Section 1252(g). *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) ("This is not a challenge to the Government's discretionary choice of 'whether and when' to remove [Petitioner]. Essentially, [Petitioner] 'do[es] not seek a

review of a decision that could invalidate [his] removal order[].' So [Section] 1252(g) cannot bar the Court's review.") (citation modified).

Additionally, the Court notes Petitioner's efforts to confer and provide notice, through counsel, before filing this application under the Federal Rules of Civil Procedure and the Southern District of Texas Local Rule 7.2. Petitioner has filed a Rule 65 certificate of conference detailing counsel's efforts to confer with Respondents regarding the requested emergency relief. Petitioner's counsel represents that he was informed by Respondents' counsel that Mr. Qarana is no longer assigned to this case, although he is listed as counsel of record. (Dkt. No. 18-2 at 33). Petitioner's counsel further represents that she has met with Respondents' counsel and Respondents' counsel opposes the instant motion. (*Id.*).

**B. The TRO Factors Weigh in Favor of Petitioner**

Upon review of Petitioner's claims, the Court finds that all the factors weigh in favor of granting the application for an emergency temporary restraining order.

*1. Petitioner Is Likely to Succeed on the Merits*

Petitioner has demonstrated a substantial likelihood of success on the merits on his due process claim under the Fifth Amendment. (Dkt. No. 18-2 at 16). Petitioner's claim is factually similar to the claim presented in *Sagastizado* and *Mbaba*, in which the district court concluded that removing a noncitizen to a third country without providing a meaningful opportunity to raise a fear-based claim violated due process. F. Supp. 3d 992 at 1008–13; *Mbaba*, 5:26-CV-00070, Dkt. No. 8 at 3 (S.D. Tex. Jan. 18, 2026). For the purposes of this analysis, the Court finds these cases persuasive in analyzing Petitioner's claims here. The reasoning in those cases applies equally to the present case and shows that Petitioner is likely to succeed on the merits of his claims. Therefore, the Court finds that Petitioner has satisfied the first factor for issuing a temporary restraining order.

*2. Petitioner Will Suffer Irreparable Harm*

Next, the irreparable harm factor weighs in favor of granting a temporary restraining order. The Court recognizes that "the burden of removal alone cannot constitute the requisite irreparable injury," *Nken v. Holder*, 556 U.S. 418, 435 (2009). However, the Court finds that Petitioner has alleged the potential for harms beyond

removal itself. For example, in the case of removals under the Alien Enemies Act (AEA), the Supreme Court recognized that detainees' interests at stake are "accordingly particularly weighty" when subject to removal under the AEA without adequate notice or an opportunity to be heard. *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.")

Here, Petitioner similarly alleges harm beyond removal itself. Petitioner asserts that he faces possible removal to an undisclosed third country. (Dkt. No. 18-2 at 27). Moreover, Petitioner represents that he has not received an evidentiary hearing before an Immigration Judge to determine whether his life or liberty would be threatened or whether removal to a third country would create a risk of refoulement to Ethiopia. (*Id.* at 24–25). Further, Petitioner alleges that if he is removed to an undisclosed third country, he faces a risk of refoulement to Ethiopia, where he fled after being repeatedly arrested, detained, and tortured by the Ethiopian government based on its false perception of his political affiliations because he is a member of the Amhara ethnic group. *See Misirbekov v. Venegas*, 793 F. Supp. 3d 892, 895 (S.D. Tex. 2025); (Dkt. No. 18-2 at 13). Given these circumstances, the Court finds that Petitioner has sufficiently demonstrated irreparable harm beyond removal itself.

*3. The Balance of Equities and Public Interests Weigh in Favor of Petitioner*

Finally, the balance of equities and the public interest weigh in Petitioner's favor. Since the Government is the non-movant, these factors merge. *See Nken*, 556 U.S. at 435. Petitioner's interest in receiving constitutionally adequate procedures before being removed to a county where he may face persecution or torture, potentially through refoulment, outweighs any administrative burden imposed on Respondents by temporary injunctive relief. *See Nunez*, 537 F. Supp. at 587 (holding that protecting individuals from persecution goes "to the very heart of the principles and moral precepts upon which this country and its Constitution were founded"). Moreover, the Government can't make a cognizable claim of harm from an injunction when it perpetuates an action that violates statutory or constitutional protections. *See State v. Biden*, 10 F. 4th 538, 560 (5th Cir. 2021) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is generally no public interest in the perpetuation of unlawful agency action");

*see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022). As such, the Court finds that this final, merged factor weighs in favor of granting a temporary restraining order.

**C. The Requirement for Bond is Waived**

The Court exercises its discretion to waive the requirement to post a bond under Rule 65(c). Although Rule 65(c) generally requires a party seeking injunctive relief to provide security to cover the costs and damages that may result from a wrongful injunction, the Rule leaves the amount of such security to the discretion of the district court. *See* Fed. R. Civ. P. 65(c). The Fifth Circuit has recognized that this discretion includes the authority to require no bond at all. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curiam) (citations omitted); *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming *Corrigan Dispatch*).

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 18), is **GRANTED in part**.

Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby temporarily **ENJOINED AND RESTRAINED** from transferring Petitioner outside of this judicial district or removing him from the United States while the Court considers the merits of his claims.

This Temporary Restraining Order shall **REMAIN IN EFFECT** until the Court issues a ruling on the motion for a preliminary injunction, or until June 5, 2026, whichever is earlier.

Respondents are ordered to respond to Petitioner's motion for a preliminary injunction, (Dkt. No. 15), by **May 29, 2026, at 5:00 p.m.**, and the Court will set a hearing for a date and time to be determined.

It is so **ORDERED**.

**SIGNED** on May 22, 2026.

John A. Kazen
United States District Judge